Case number 22-5255, United States of America v. Barry Fischer Law Firm, LLC, et al., Elizabeth McKay as joint official liquidators of Trade and Commerce Bank, and Gordon McRae as joint official liquidators of Trade and Commerce Bank, at Balance. Mr. Bono for the at Balance, Mr. Braunstein for the Appellate. Please note that Judge Rogers is participating telephonically. Good morning, Your Honor. May I please have the floor? My name is Craig Bono, and I represent the Appellate here, liquidators of Trade and Commerce Bank. Through this appeal, we ask that this court reverse the District Court's decision on a motion to dismiss, finding the interpleader that was filed originally in the Southern District of New York, and through a variety of procedural steps, made its way to the District Court here in the District of Columbia, moot based upon a separate parallel 24-67 proceeding, which is pursuant to a mutual legal assistance treaty recognized and authorized by the United States Foreign Criminal Proceeding forfeiture order that was issued. This case is very complicated. The procedure is very complicated. I'm going to attempt to identify what I see as the most important points. Obviously, please let me know if there's some complication that is unclear to you and that would help you through this process. Let me ask you a question. So there was no appeal from the 24-67 judgment? Correct. So that judgment forfeited the property to the United States and said any other claims against the property were in default? Correct. So why doesn't that moot the interpleader here? Walking through the Second Circuit opinion, what that process did was to provide Brazil a pathway to create an exception to the penal law rule, which otherwise prohibited their ability to establish their priority in the interpleader, which was filed far prior to 24-67 for any of those proceedings back in 2010. So, if Your Honor will indulge me, it sounds like you understand the procedure. I won't bore you with how we got to where we are. But the Second Circuit, on an appeal from the liquidators and a motion for summary judgment... I'm not asking about the Second Circuit case. I'm just asking about what is the effect of the 24-67 judgment? I guess I'm attempting to answer your question because the 24-67, the only reason it's relevant is because of the Second Circuit case. Because what the Second Circuit said was Brazil and the Attorney General, if you want to have any rights within the interpleader that we're planning on here, the one and only way for you to be able to establish those rights is to go get the 24-67. Thereby allowing you to, quote-unquote, bypass the penal law rule that is otherwise prohibiting you from pursuing your claim in the interpleader, which is what the Second Circuit determined. That is why the 24-67 was never initiated. The only reason that any of this came up is because in the interpleader, in that appellate briefing at the Second Circuit, one of Brazil's arguments was that there was an exception to the penal law rule... ...established by merely the initiation of the interpleader by the United States. Because the United States and the Attorney General as the executive branch were speaking that it was fine for the judicial branch to determine whether or not this criminal proceeding in Brazil was a legitimate basis to establish a claim to the funds in the U.S. The Second Circuit said, no, that wasn't enough to establish the exception. Instead, what you had to do was go through the 24-67 process to establish the exception. What I think you're getting at is what I perceive to be a priority argument, which would be in the interpleader, Brazil is free to argue. Look, we have our... My question, though, is why... So do you think the United States would have standing to bring an interpleader today after the 24-67 judgment? Because to bring an interpleader, you have to have some kind of reasonable threat of competing claims. After the 24-67 judgment, would there even be jurisdiction for the United States to bring an interpleader? I absolutely believe there would be, because in the interpleader, the question is, which of the claims has priority? One of the ways in which you establish priority in the interpleader is first in time. Who had the first in time claim? I was just going to try to refocus you on the language of the June 2021 order, which, as Judge Rao pointed out, said your client's claim is held in default. Now, what do you think that... Assume we know all of the background, and at least my concern is when that order came out, it says the property is forfeited. It may be seized by the U.S. and that your claim is in default. What do you understand that language to mean? So, as I've attempted anyway to try to answer, I think that language is an arrow in the quiver of whomever it is that is going to go forward and attempt to establish that their claims are legitimate based upon that 24-67 order, in addition to the criminal proceedings that underlies. I think that's what the... I guess my point is, today we aren't here arguing that because the court, rather than allow us to argue that particular point in a priority discussion, which I think goes to many things, including the fact that under 24-67, the relation back doctrine that you see in 18 U.S.C. 981F and 18 U.S.C. 881H, wherein when the United States forfeits property pursuant to either of those statutes, the title to that property vests in the United States as of the time of the underlying conduct, whatever it was that led to the forfeiting. Right. So that's the merits argument you'd like to be able to make on remand in this case and interpleader about priority. And I appreciate it's a little bit odd that there was never a priority determination made except for the initial district court decision in the case. But it seems maybe to sharpen this up, your basic theory is that all that happened in the 24-67 case is that Brazil was granted a potentially enforceable judgment, sort of a potential right on par with the judgment that your clients had. But when I look at what actually happened in the 24-67 case, we have the March 31 order document 27, which seems to describe what you think was the end of that case. But then in the court's opinion says the government should now move for a final order of forfeiture. And they did. And you opposed that on the ground that you wanted explicit language in the final order, saying that the 24-67 order was contingent on the interpleader. Right. And the district court rejected that and entered a final order of forfeiture, holding your claims in default. And whatever else your clients hoped would happen, it seemed to me at that point, you had to appeal because what happened was a final order disposing of all the claims in the case. So what does that, what am I missing about that history? Well, so what I, I understand, I understand your question and I understand your position. My, the answer is that the interpleader, in my opinion, can't be viewed in isolation and in a vacuum. It has to be viewed in the greater context of where, how we got to where we were in that situation. And the district, certainly the order says what it does, and we would be happy again to argue within the interpleader context what that means vis-a-vis priority. But I don't, what that court didn't, what the order doesn't say is that the interpleader is now moved. Right. That order didn't say that the interpleader was moved. What the district court did in this case, whenever it cited the second, it cited just the second circuit opinion to move this on the motion to dismiss, that is what it cited to in footnote one in this case. Right. It said that the second circuit hold it, that if it being the district court, that our remand, if Brazil went and got that 2467, therefore the interpleader is moved. That is not what the second circuit said. And so while I understand your focus on what the in that order states, the second circuit's opinion is what should govern what happens in the interpleader itself. Because that is that first of all, it's the law of the case is what has already happened in this case. The reason that there was no appeal is because the second circuit gave permission for the Brazil and the United States to go forward through that process. And that is how would your clients have a claim against the United States outside of the interpleader? So say, say, we affirm and and find the interpleader is moved. Would would the liquidators be able to bring a claim against the United States in a separate action? Yes, I don't know. But the answer to that is no. Then the United States isn't facing conflicting claim on this property. Right. So I said the answer is I don't know. Oh, you said I don't I don't. Off the top of my head, I don't know the answer to that question. I think that as we sat initially when when the two competing judgments existed, if the United States had just given the money away rather than make an attempt to determine whether our judgment was set equally with or in priority to Brazil. I think, yes, I would have to do a little bit more research on what happens whenever there's several court orders that have happened in the interim as to whether there's a there's a legitimate claim or not. But certainly, I think, but for having been ordered to do things by a variety of courts, there would have been a claim. I don't know the answer, as I sit here today. Right. But so so I mean, I guess I asked you this question. I'm not sure if you answered is do you think the U.S. would have standing to bring an interpleader claim today after the 2467? Yeah. Yes, I think that they would, because if they had for the same reasons that we think that we have a priority because the the claim to the funds. I know you have a priority claim, which would be, you know, as opposed to Brazil. But now title has been given to the United States. So from the United States side, not from the competing claimant side, I mean, with the United States have some reasonable belief that it would be subject to complete competing suits. I do think so. And even in even in the 981 or an 881 case where forfeiture occurs, if third parties still have the right, even when title does best pursuant to the Section F or Section eight, third parties still have rights to bring their claims and say, wait a minute. We are we still should be allowed to pursue whatever rights I have against the asset, because I'm an innocent third party and it's not fair that you're taking those assets away from the government here. And 2467 doesn't have that language. So as a third party, innocent to all of the the underlying the criminal forfeiture proceeding in Brazil, the liquidators absolutely have a right to this. Maybe the government has a has a separate view of how those judgments should stand in relation to it. But both of them are legitimate judgments. One of them was issued by a southern district bankruptcy court in New York in 2010. One was more recently issued by the district court in the District of Columbia and the Brazilian court in Brazil. And then a determination between those two should be made. And there is absolutely, I believe, their standing in order for the court to give that to a district court and say, please figure out which one of these two claimants has the greater claim. One of the. One thing the government says is essentially that if you had a priority argument, you should have gone to the Brazilian court and made that argument there. What is your response to that? Well, first of all, it's not clear that that's even would have been a possibility. But leaving aside whether it was a possibility or not, we were the the funds that we were seeking to to to obtain in relation to the judgment that we have sat in the United States held in a U.S. Marshall account at the time. We brought our claim to the U.S. They then interpleaded those funds in the United States court, named us as the interpleader defendant and asked the court to determine the priority of our judgment vis-a-vis everyone else. So we participated in that litigation all the way through the Second Circuit back and all the way to here. There's no reason why we wouldn't pursue the lawsuit and pursue the money where it's that versus having to go to Brazil. And there's no into a criminal proceeding that we weren't party to unrelated to what our judge having nothing to do with our judgment. It just wouldn't make any sense for us to have gone and done that there when we were already here. And so was the money we were seeking to execute. I think I have a minute and a half left. Judge Rogers, do you have any questions? Not now. Thank you. We'll give you some time. Morning. May it please the court. Shy Bronstein for Pele, the United States of America. This court should affirm the dismissal of the interpleader action because the twenty four sixty seven action definitively disposed of the funds at issue in this case. The judgment in the twenty four sixty seven action, which was not challenged, which is not appeal. Vested the rights and title to the Venus account in the United States and declared it forfeit. And it held all other claims to those funds in default. There is no further relief that the court can issue in the interpleader action, and therefore it is. So I can't in the interpleader action, the court simply determine the priority and perhaps the United States wins because of its twenty four sixty seven judgment. But why shouldn't it? Why shouldn't that have to be resolved in the interpleader court? The reason for that, your honor, is that section twenty four sixty seven is a mandatory statute. It is a statute of exceeding deference and it puts priority on the twenty four sixty seven action. It says, for instance, in Section D, the most important language of the court shall enter orders to enforce the twenty four sixty seven action. It also cabins the judiciary's discretion. It says in subsection E, the court shall be bound by the findings of fact in the foreign judgment. And so maybe that's that's all. But why wouldn't that have to go back to the interpleader? I mean, this is a very peculiar situation because obviously the United States brought this interpleader action during the sort of six months between Tiger Eye and the amendment to the statute, allowing the restraining of funds. So it's a kind of a strange circumstance. But now that the interpleader has been initiated, why shouldn't it determine the priority? Because of the nature of the judgment, your honor, in the in the excuse me, twenty four sixty seven action. The forfeiture order is a forfeiture order. It is an order in rem with respect to specific property. It is to be enforced per subsection C1 as if the judgment were entered in the United States. And so the court in its thinking can look to domestic forfeiture law and what an in rem process looks like. This is a process by which all of the rights to that specific property are decided exclusively in that action. And as to the United States as against the entire world. So it is an in rem process. It is a forfeiture. Now, as to respect as to the argument about what they have brought claims, they absolutely could have and should have in the Brazilian action. The liquidators, as the record makes clear, did have notice since at least June of 2010. In fact, before the interpleader action was filed, that they could have brought a claim in the Brazilian action. And they were instructed about the ability to to bring that in for their filing. So let me ask you conceptually about mootness. So so one way the interpleader can be moot is if there's no longer an injury to the United States, which is the which you know, which is the party that brought the interpleader. Another way it could be moot is if there's no longer any redress ability and the court can't order relief. And so I'm wondering which is the better conceptual way to think about mootness here. I think I think the court can approach it in either direction. There is no relief that can be offered by the court because what's being disputed in the interpleader action is effectively who gets who gets these funds. The court in the 2467 action has already said the United States has them their forfeit. And so therefore, there's no live controversy effectively that the court can grant refund in the interpleader. An interpleader action in this context is also incoherent because the very nature of an interpleader action is where the plaintiff stakeholder disclaims any right to the property that it is interpleading. Because of the 2467 judgment, which vests title in the United States, the United States is no longer a disinterested plaintiff stakeholder. It's now a very interested holder and has a claim to that property. So maybe that is the better ground for mootness then that the United States no longer has the type of Article 3 injury that makes it appropriate to seek interpleader. Your Honor, the government believes that either either path to mootness is equally valid. There does not seem to be a dispute. And so there is or excuse me, there does not seem to be relief granted. And so there is mootness on that ground. But as you determine that there can't be relief granted, we would have to make a number of pronouncements about how 2467 works in this context where there is one. There is a judgment for the liquidators from one court and there's a 2467 judgment from the district court. And maybe perhaps that is a perhaps it would be more minimalist to say, you know, maybe it might be a more narrow decision to determine that there's no longer an injury here. That would be a narrow path, Your Honor. We would agree with that because as the court raises, there is no longer Article 3 standing in the sense that there's no longer an Article 3 controversy because the United States would stand as both the plaintiff stakeholder and a defendant interest holder. And do you agree that you need Article 3 standing for interpleader? There are not a lot of cases about this, and there are very few cases involving the U.S. seeking interpleader. That's correct, Your Honor. We're not aware of any. There are very few cases, as the court will note, on both Section 2467 and interpleader in this context. And that's, of course, exactly the issue that the court has raised. This is a very unique circumstance where Section 2467 said one thing, Tiger Eye came and said the United States is interpreting it wrong. And then there's only about a five-month donut hole between when that happens and when it gets fixed, which should show the court how important Congress understood that to be. That's a remarkably quick period of time to amend the statute to fix that issue. And so in this case, the 2467 action does definitively dispose of the assets unless there is one of five enumerated exceptions that the liquidators could have raised in that action and chose not to. They could have raised the due process arguments. They could have raised the lack of notice and ability to challenge it. And yet they did not. In fact, the proposed order that Judge Garcia, you referenced earlier at Docket 30, they effectively concede all of the enumerated exceptions to 2467. So they knew, the liquidators knew, that they were going to end up with this judgment that says that the property is forfeited. In fact, they almost asked for that by not challenging and not raising any of the enumerated exceptions to 2467. You mentioned normal domestic forfeiture proceedings. And you said, I think, that essentially the forfeiture proceeding is dispositive and final. Are there any exceptions to that? For example, if someone just doesn't receive notice of the proceeding? Of course. There are due process requirements baked into and as part of domestic forfeiture proceedings that ensure that potential claimants have notice to initiate a claim as against the potentially forfeited property. And so 2467 is actually a close analog to those due process protections in the United States. It requires that there be a system of due process, that the court have jurisdiction, that the judgment not be entered by fraud, and the potential claimants have notice. And so all of those were met. So it's your, effectively, your position is, and maybe we don't have to resolve these questions in this case, but that what 2467 envisions is that everybody with a priority claim would actually litigate that in the foreign court, not in a domestic court. And once we're in a 2467 proceeding, their only argument will be lack of notice. That's exactly right, Your Honor. The liquidators could have brought that claim of priority in the Brazilian litigation. Brazilian law does allow for the relation back doctrine, just like the United States, and that was raised in several of the filings in this case. But the proper place to raise that challenge was in the forfeiture action in Brazil. The liquidators had notice of it, the liquidators acknowledged that they had notice of it, and they could have raised exactly that defense. So by the time the Brazilian government, Brazilian courts have issued an in rem forfeiture saying that this property is forfeit and title should vest in Brazil, all that's left for the 2467 action, because of this deferential language, is first for the attorney general to decide whether that system was fair, whether it had due process, and then whether it's in the interest of justice in the United States to enforce that forfeiture order. Once the attorney general makes that decision and certifies it, that decision in B2, subsection B2, is final and not subject to judicial review and not subject to administrative review. The court in subsection E shall be bound by the findings of fact of the foreign judge, and in subsection D the court shall enter orders to enforce. And so as I said, section 2467 is one of exceeding deference. It's as if in subsection C, the U.S. court had issued a forfeiture judgment. And so all of the concerns that the liquidators raise about priority or things like that, they're baked into the Brazilian forfeiture proceedings, and it's part of the statute to consider that those have to be available. So following up on a question asked, I think, by Judge Rao, there is no interpleader action left, in a sense, in connection with this particular controversy? Is that the United States' position? So it could not bring an interpleader action at this point? That's exactly right, Your Honor. At this point, the United States has title to the property and per the 2467 order, and per its treaty obligations in section 2467, once the stay is lifted, it will transfer that property to Brazil. Let me ask. I'm interested in your view, question. I asked the liquidators as well. If the interpleader is moot, would the U.S. be subject to a suit from the liquidators for this property? Could they be? I apologize. I couldn't. I mean, if the interpleader is moot, do you think the bank liquidators could bring a suit against the United States for this property? They would not have a claim against the United States. At this point, the United States has an in rem. It has a forfeiture of the property. And as the court held in the 2467, all claims to the property are held in default. And so that would extinguish the liquidators claim as against the United States. And that is yet another reason why the interpleader action is rendered incoherent by the decision in the 2467 action. The United States effectively would have to stand on both sides. The property is no longer within the court's ambit because the district court has said that the property is forfeit. And there's no relief that can be granted. And so whether the court takes that approach as there's no relief or whether there's no controversy, the government's position is either way it leads to the same conclusion. The action is incoherent and unconstitutional and should not be allowed to proceed because the court lacks jurisdiction. So basically, you view the interpleaders concern here arising simply from the fact that it litigated this for years, had a judgment, and then the law changed. And of course, it says, well, the government changed its position. So the government did not change its position about the interpleader. No, I understand your position. But from the liquidators point of view, there was a change. And the government says, well, we're simply following the law as it's now been articulated. That's correct. I think there's two responses to that. The first is the government is following the laws that's been articulated in the change 2467, but also following the order of the Second Circuit, which was instructing the government about the penal law rule effectively. It required that if Brazil is going to bring its forfeiture judgment into the United States, it has to happen through 2467. And so the government, far from changing tactics or things like that, is simply following the Second Circuit's requirement in this regard. Now, in terms of the liquidators arguing, well, we've been litigating this for a long time, that may be the case. But they've been on notice for 13 years now that if they wanted to challenge the Brazilian forfeiture order, they should have done that in Brazil. That's baked into those proceedings. It's part of Section 2467. They chose at their own peril to litigate exclusively in the interpleader action, which now that there is a foreign final judgment, and now that the court has decided to enforce it and forfeit those funds, disposes of their claims. See, my time is nearly up. If there are no further questions, the government would respectfully request that the court affirm the dismissal of the interpleader action. Thank you. I'll give you two minutes on rebuttal. I said we'll give you two minutes on rebuttal. Thank you. I'd like to just make two points and then answer any questions. One of the points is that both the government's, many of the questions here today and the government's position appears to be that once there's a forfeiture, the game is over for everyone. That is it. But that isn't the case. In fact, you can look to actual domestic for forfeiture law to determine that it isn't the case. If it was the case that once a forfeiture occurs, as to everyone else in the globe, the United States has greater title. Then why is the relation back doctrine incorporated in both 981 through section F and 881 through section H, which best title in the previous time than when the forfeiture occurred because you wouldn't need to, which improves the priority of the government. Right? Whining the clock back improves their priority vis-a-vis anyone who ascertained who obtained a claim in the interim between whenever the conduct occurred and when the forfeiture order was issued. That is why that relation back doctrine exists to improve the government's claim to those funds. You wouldn't need to improve the claim. If at forfeiture, that's it. It was over versus everyone. Anyway, 2467 doesn't include that relation back. That is why the game isn't over and why we have to now go do a priority termination to determine whether the 2467 and the underlying criminal proceeding in Brazil governs and has priority or the liquidators. The other point I want to make is that while I understand that we spent a lot of time not talking about the second circuit opinion, it is the opinion that governs the interpreter, which is where this appeal sits. It is the opinion that describes how this whole process was supposed to play out. And in that opinion, it explicitly says that what Brazil tried to do the first time by asserting that the initiation of the interpreter was an exception to the penal law rule was to, quote, unquote, bypass the actual exception to the penal law rule, which is the 2467 process. The only place where an exception even matters is if the rule itself is going to be applied. Otherwise, you don't need an exception because you don't have a rule. The only place the rule applies is the interpreter because the penal law rule is not a is not has nothing to do with the 2467. It's not a defense there. So for the exception, as the second circuit described it to matter, we have to go back to the interpreter. We have to the liquidators have to say, you know, law rule blocks you, which has already happened. Then Brazil or the United States has to say, wait, we have an exception to the penal law rule. Here's our 2467 that we did pursuant to what the second circuit told us to do. And now we should win. And then we will say we should win. And then the district court should determine who, in fact, does win. That is how this should play out. That is the course that the that the government set in 2010 when they initiated this interpreter. And, of course, the second circuit outlined in its opinion. And that is what should govern this course decision on the motion to discuss. Thank you. Thank you. It's a submitted.
judges: Rao, Garcia, Rogers